My name is Manuel Porro Vizcarra. With the federal counsel, Yesenia Varela and Mary Laborde, we represent Isela Velez in this case. We seek that this court to vacate the judgment that was issued by the district court because Isela Velez was a woman that wanted to work, was capable of work, and was not permitted to work by the employer. Once this court construes this case based on the facts and on the way that the district court gave to some facts which in our opinion are impermissible, this court will have to vacate the order because none of the issues decided by the court are issues that are upheld by other court decisions in this case. Counsel, before you get into your version of the facts, don't you have a problem with the timeliness of the filing of at least the retaliation claim? You had to file that within 180 days and you did not. Well, Your Honor, that's not correct. Okay, what's wrong? What's wrong is that what the government, what the defendants are using is the date that the EOC issued the notice, but it's not using the date in which the plaintiff filed the claim with the EOC. Under the case of Holowicki, which is cited in our brief, it is sufficient for a plaintiff to send a letter to the EOC raising the claims of discrimination retaliation, and what controls is the date that that decision, that that letter was sent to the EOC, and what's not controlling is the date when the EOC follows up on the letter. In this case, the claim for the issue that the claim is untimely doesn't hold water when you consider that the date, the charge, the letter to the EOC was presented. Wait a minute. The letter she sent to the EEOC was about February 18, 2011, and that was the charge. Isn't that correct? That's correct. And she's complaining about the June 30, 2010 events, telling her she's not being rehired, and it's more than 180 days between those two events. She was told that she was not going to be reasonably accommodated on April 30, 2010, and that's when the retaliation starts because the reason given... April 30, 2010. Yes, the reason given... Okay, so now we've agreed on that, but it's 233 days, not 180 days between those two dates. In Puerto Rico, Your Honor, based on the cooperating agreement between the agencies, it extends to 300 days, not 280 days. And not under Rivera-Diaz, not for this type of claim. Are you willing to concede the retaliation claim is untimely? No, Your Honor, because the retaliation claim is derived from a series of continuous acts. All right. All right. So then let's take the discrimination and the retaliation claims. Apart from a series of questions about whether your client is in fact an employee, the employer says, look, she was on a one-year contract. The one-year contract expires. She didn't apply for the job, even though she knew she had to apply for the job. That's our explanation. We didn't renew the contract. She never even applied to have the contract renewed. What evidence do you have that that's pretext for discrimination? Well, Your Honor, number one is that the reasons the employer uses to deny the reasonable accommodation is that she was an independent contractor. I'm sorry. The question is, what evidence is there that the employer's explanation is pretextual? Well, Your Honor, it's very, yes, I understand the question. That it was a pretext for discrimination. In this case, the district court held exactly that because she did not renew the paperwork for her contracts, it was reasonable cause to terminate her employment. No, no, her employment only extended to a certain date and she did not apply to extend it beyond that date. She received no notice from the employer that she had to renew the contracts. The employer sent this plaintiff two communications to or through the intranet. The intranet was only accessible to individuals who were at work. So the employer chose the only way to notify an employee so that the employee would not get notice. The employer had used prior to that messenger services, like when they sent the reasonable accommodation form to her. They didn't use messenger service in this case. The employer had communicated with her through their personal email at Hotmail and that was not used in this case. And the employer had sent mailings to her address just like the letter denying reasonable accommodation and the employer did not use it. So it sent it to the intranet. I thought there was a concession that your client knew that she had to apply to get reemployed on a new one-year contract. The plaintiff knew she had to apply once she got notice of what documents to submit. I'm sorry, where in the record am I going to find that she knew only after she got notice from the employer? In her testimony. In her deposition testimony? Please send us a letter that gives us the specific citation in the record to that effect. In addition, she also says in her deposition testimony that when the documents would not arrive on time to the employer, the employer would communicate with her requesting the documents and that didn't happen. But more importantly. You will detail the precise page. I will give her. Before you leave that though, didn't she also acknowledge that she had been through this process several times in the past and she knew what paperwork had to be filed? Yes, she has been an employee for many years there. How can you say she doesn't have notice? Because the process started when all the professional contractors received a letter saying by this deadline you have to produce documents. If she never got the letter, it's a due process consideration. Why should she comply with a notice that she never got? Because she was aware of the timelines from having gone through it several times in the past. It seems to me that that's sort of the obvious answer and she acknowledges it. So deal with that. It is true that she had gone through this process before. But the process started once she got notice of the letter. She could not just by herself sign a contract or send documents without knowing what documents were to be sent. In fact, in this case, there was a mating to her intranet again in which finally the government informed independent contractors that from now on they were going to be considered employees, something that the government had recognized since December of 2009. I'm sorry, your claim is not that she didn't get notice, correct? Because she admits she got the intranet notice. That's not correct, Your Honor. I'm sorry. I thought it was undisputed. It went to everyone. And her problem was because of the eye problem, she couldn't read it. Have you got that wrong? No, no. The only issue as to she couldn't read entails when the reasonable accommodation form was sent to her through the intranet. Then she said, listen, I cannot use it because it's a very small font. Please send it to me again. And then Mabel Medina sent it to her via messenger service. You're denying that she received the intranet notice that the other people in her position, whether you call them employees or contractors, that everyone got saying, if you want to be re-employed, submit these things to us. I would be standing before these three judges if she had received notice. Yes, but you're not answering my question. Can you please repeat it then? I misunderstood it. I thought your case was built on the fact that the notice they sent was through the intranet and she couldn't read it. No, that sounds correct. Are you saying they made an exception for her and they did not send her the intranet notice they sent to everyone else? We're talking about two different things. All right. The letter requesting all independent contractors to submit the documents was sent to her on May 18, 2010. It was sent to the intranet on May 18, 2010. She was out of the job. You're saying intranet. Intranet, yes. Intranet. Intranet. It has been established that intranet is a system that can only be accessed when you're in the complex. All right. So she was not discriminated against. They sent it to her intranet account. She just wasn't there and, therefore, didn't receive it. She was discriminated because the government...